DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Stacie L. Kraly
Assistant Attorney General
Office of the Attorney General
P.O. Box 110300
Juneau, Alaska 99811
(907) 465-3600
Attorney for State of Alaska
Alaska Bar No. 9406040

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Jill Longenecker, as guardian for Kavan Mangus, a minor child,<br>    Plaintiff,<br><br>vs.<br><br>State of Alaska, Department of Health and Social Services, Karleen Jackson, in her official capacity as Commissioner of the Department, Division of Senior and Disabilities Services, and Rod Moline, in his official capacity as Director of the Division,<br>    Defendants. | Case No. 3:06-CV-22 (TMB) |

### MEMORANDUM IN SUPPORT OF THE DEFENDANTS' FIRST MOTION TO DISMISS

  Jill Longenecker, as guardian for Kavan Mangus, a minor child filed the initial complaint on January 31, 2006, alleging two causes of action; specifically, a violation of due process for failing to provide a fair hearing pursuant to 42 C.F.R. 431.220(a)(2) and a violation of 42 U.S.C. § 1983, to recover money damages. On May 15, 2006, Ms. Longenecker sought leave to amend her complaint, alleging a cause of action for violating the "freedom of choice" provision of 42 U.S.C. § 1396a(a)(23). The state takes no position related to the motion for

leave to amend because even if the First Amended Complaint is amended as sought, it fails as a matter of law. The motion to dismiss should be granted and the First Amended Complaint dismissed in it entirety because

1. 42 U.S.C. § 1396a(a)(23) does not confer a private right of action;

2. even if it does there has been no violation of the statute because the provider at issue is not qualified, a requirement under the freedom of choice provision of the Medicaid act (42 U.S.C. § 1396a(a)(23));

3. there is no right to a fair hearing because there has been no adverse action (reduction, suspension or termination of a covered service) as defined by 42 C.F.R. 431.220; and

4. there can be no recovery under 42 U.S.C. § 1983 because none of the named defendants is a "person" as defined under 42 U.S.C. § 1983.

**Factual Background**

The facts in this case are simple and straightforward: Kavan Mangus is a disabled child who currently receives waiver services pursuant to Alaska's Medicaid Program.[1] He qualifies for a mental retardation/developmental disability (MRDD) waiver under AS 47.07.030(b) and 7 AAC 43.1000-1990.[2] As a waiver recipient, Kavan is eligible to receive a variety of services, including Intensive Active Treatment/Therapies (IAT) as provided in 7 AAC 43.1048. That regulation provides in full:

(a) The department will reimburse for intensive active treatment services

(1) that are provided to a recipient in one of the following recipient categories:

(A) children with complex medical conditions;

---

[1] Complaint and First Amended Complaint (Docket 1 and 11).

[2] *Id*.

      (B)  adults with physical disabilities; however, the department will reimburse only if a recipient in that recipient category is also diagnosed as experiencing a developmental disability;

      (C)  individuals with mental retardation or developmental disabilities;

   (2)  that are approved under 7 AAC 43.1030 as part of the recipient's plan of care;

   (3)  that receive prior authorization; and

   (4)  for which the professional providing or supervising the services submits supporting documentation to the department that the recipient needs immediate intervention to decelerate a condition or behavior regression that, if left untreated, would place the recipient at risk of institutionalization.

(b)  The department will consider services to be intensive active treatment services if

   (1)  the department determines them to provide specific treatment or therapy, in the form of time-limited interventions to address a family problem or a personal, social, behavioral, mental, or substance abuse disorder in order to maintain or improve effective functioning of the recipient;

   (2)  each intervention requires the precision and knowledge possessed only by specifically trained professionals in specific disciplines, whose services are not covered under Medicaid or as habilitation services under 7 AAC 43.1045 - 7 AAC 43.1046; and

   (3)  the treatment or therapy is designed and provided by a professional licensed under AS 08 with expertise specific to the diagnosed condition, or by a paraprofessional licensed under AS 08 if necessary and supervised by that professional.

In February 2005, a plan of care was submitted on behalf of Kavan to the Division of Senior and Disabilities Services (DSDS), seeking authorization for a number of services, including IAT.[3] The specific type of IAT the plan of care identified was Applied Behavioral

---

[3]  Docket 1, 11.

Analysis (ABA) service.[4]  The plan identified Dr. McEachin as the provider of this service.[5]  Although the plan of care approved IAT in March 2005, DSDS informed Ms. Longenecker that Dr. McEachin was not a qualified provider as defined by the regulation because he was not an enrolled or certified provider as required by the regulations governing Medicaid.[6]  Since Dr. McEachin was not qualified to provide IAT services in Alaska, DSDS could not reimburse through the Medicaid program.  Before DSDS could reimburse Dr. McEachin for any IAT services he provided to Kavan, he would need to be qualified under 7 AAC 43.1048 and licensed under AS 08.[7]  It should also be noted that at no time did the state inform Ms. Longenecker that Dr. McEachin could not provide IAT services in this state, only that he could not provide IAT services under the Medicaid program and be reimbursed by the state for those services.

Ms. Longenecker requested a fair hearing arguing that the inability to use Dr. McEachin was tantamount to a denial of a service; therefore, Kavan was entitled to a fair hearing on the issue.  DSDS denied that request because the issue of who could provide the services was not the type of issue (the denial, reduction or termination of a covered service) that was subject to a fair hearing, and since the service (IAT) was approved, there was no right to a fair hearing.  This determination led to the instant litigation.

**Legal Argument**

    **The Motion for Leave to Amend**

The state takes no position on the motion for leave to amend and recognizes the liberal amendment rule as set forth in FRCP 15 and the cases interpreting that rule.  Assuming,

---

[4]    *Id*.

[5]    *Id*.

[6]    *See* 7 AAC 43.035, 7 AAC 43.1048; Docket 1, 11.

[7]    AS 08 are the state statutes addressing professional licensure/occupational licensing.  As a psychologist, in order to be authorized to practice in this state, Dr. McEachin would have needed to follow the licensing provisions pursuant to AS 08.80.010 - .230, which he did not.

for the purpose of this motion, that leave to amend will be granted, the state submits the following in support if its motion to dismiss the First Amended Complaint in its entirety.

**Motion to Dismiss**

    1.    <u>There is no private right of action under 42 U.S.C. § 1396a(a)(23).</u>

To reach the result that Ms. Longenecker may allege a private right of action under the holding in *Harris v. Olszewski*,[8] the court must engage in the three-part analysis set forth in *Blessing v. Freestone*.[9] Under *Blessing*, a plaintiff must show the following three things:

1. that Congress intended that the provision at issue benefit the plaintiff;
2. that the right is not so vague or amorphous; and
3. that the provision imposes an unambiguous binding obligation on the state (the provision must be stated in mandatory not precatory terms).[10]

Once this three-prong test is met, the defendant can rebut the presumption of a private right of action by showing that Congress did not intend to create such a right in the statute.[11]

The state submits that the *Harris* court did not properly apply *Gonzaga v. Doe*;[12] therefore, *Harris* should not be relied upon in determining when a private right of action exists under 42 U.S.C. § 1396a(a)(23). The United States Supreme court in *Gonzaga* expressly rejected the notion of "anything less than an unambiguous conferred right to support a cause of

---

[8]     442 F.2d 546 (6th Cir. 2003).

[9]     329 U.S. 329, 340-341, 117 S. Ct. 1353, 137 L. Ed. 2d 569 (1997).

[10]     *Harris v. Olszewski*, 442 F.2d 546, 461 (6th Cir. 2003), citing to *Blessing*, 520 U.S. at 340-341.

[11]     *Harris*, 442 F.2d 546 at 461, citing to *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 125 S. Ct. 1453, 1458, 161 L. Ed. 2d 316 (2005).

[12]     536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002).

action brought under § 1983" by stating that "whether Congress . . . intended to create a private right or action [is] definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class."[13]  In fact, the court in *Gonzaga* noted that the test to determine whether a private right of action exists is a stringent one and has only been found to exist twice by the U.S. Supreme Court since 1981.[14]  Notwithstanding the clear instruction in *Gonzaga* regarding the limitation of the *Blessing* test, the *Harris* court relied upon the three-part test in *Blessing* to come to its conclusion.

In contrast, the state submits that the federal district court in Utah properly applied *Gonzaga* in concluding that

> the authorizing provision of the Medicaid Act does not contain the rights containing language unequivocally conferring an individual right to support a cause of action under 1983 . . . .[15]  The statute merely enables the states to administer the Medicaid program for the intended beneficiaries and authorizes payment to states participating in the Medicaid program; it does not create an unmistakable right in those beneficiaries.[16]

The *Betit* court found that since the Medicaid Act did not contain the "unambiguous rights creating language required by *Gonzaga*," there was no private right of action under 42 U.S.C. § 1396a(a)(23).[17]

---

[13]   *Gonzaga*, 526 U.S. 284, 122 S. Ct. 2275, quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576, 99 S. Ct. 5479, 91 L. Ed. 2d (1979).

[14]   *Id*. at 280-81.

[15]   *M.A.C. v. Betit,* 284 F. Supp. 2d 1298, 1306 (D. Utah 2003).

[16]   *Id*.

[17]   *Id*. at 1308.

The State submits that this court should follow the reasoning of *Gonzaga*, as applied in *Betit*, and find that there is no private right of action under 42 U.S.C. § 1396a(a)(23).

2. Notwithstanding if the court finds that a private right of action exists under 42 U.S.C. 1396a(a)(23), there has been no violation of "freedom of choice" because Dr. McEachin is not a qualified provider under the state Medicaid program.

If the court accepts *Harris* and finds a private right of action, Count I must be dismissed because in order for there to be a violation under the freedom of choice provision of the Medicaid Act, Dr. McEachin must be a qualified provider under the Alaska Medicaid program.[18] To be qualified, he must be enrolled with the Alaska Medicaid program and be licensed under AS 08. He is neither.[19] Dr. McEachin is not a qualified provider and Ms. Longenecker's ability to seek redress under the freedom of choice provision of the Medicaid Act fails as a matter of law.

The U.S. Supreme Court decision *O'Bannon v. Town Court Nursing Center*[20] clearly established the parameters of the freedom of choice provision set forth in 42 U.S.C. § 1396a(a)(23). In *O'Bannon*, the state of New York disenrolled a nursing home from the Medicaid program after they had been decertified by the federal government under the Medicare program. The recipients of the home filed suit under the freedom of choice provision of the Medicaid Act and alleged that they were entitled to a due process hearing before the home was disenrolled from the Medicare program. In determining the scope of the freedom of choice provision of the Medicaid Act, the court held that "[w]hether viewed singly or in combination

---

[18] 42 C.F.R. 1396a(a)(23).

[19] First Amended Complaint, Exhibits B and C (Docket 1).

[20] 447 U.S. 773, 100 S. Ct. 2647, 65 L. Ed. 566 (1980) (Blackmun, J. concurring). This case is controlling authority for both the first and second motions to dismiss filed by the state.

the Medicaid provisions relied upon by the court of appeals do not confer the right to continued residence in the home of one's choice. Title 42 U.S.C. § 1396a(a)(23) gives recipients the right to choose among a range of qualified providers without government interference."[21] The court stated further that the statute "does not confer a right on a recipient to enter an unqualified home and demand a hearing to certify it, nor does it confer a right on a recipient to continue to receive benefits for care in a home that has been decertified."[22]

In *Kelly Kare, Ltd. v. O'Rourke*,[23] relying principally on the *O'Bannon* decision, a provider brought suit under the freedom of choice provision after the state of New York terminated it from the Medicaid program. In that case, the state determined that Kelly Kare was no longer qualified to participate in the Medicaid program. Kelly Kare brought suit alleging *inter alia,* that they had a constitutionally protected property and liberty interest in being a Medicaid provider so that the state could not terminate them from the program without good cause. In addition, third-party plaintiffs, recipients of their services, brought suit alleging violation of the freedom of choice provision since they could not use this provider any longer. The court disagreed with both positions, specifically with respect to the recipients, holding that "Medicaid's freedom of choice provision is not absolute."[24] The court, citing *O'Bannon,* noted that pursuant to the Supreme Court, eligible patients did not have a vested right to choose a nursing home that was being decertified as a health-care provider. The court further stated that

---

[21]   *O'Bannon*, 447 U.S. 773, 785.

[22]   *Id*.

[23]   930 F.2d 170 (2nd Cir. 1991).

[24]   *Id*. at 178 (*citing O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 100 S. Ct. 2467, 65 L. Ed. 2d 506 (1980)).

the statute only conferred a "right to choose among a range of *qualified* providers, without government interference."[25]

The court in *Kelly Kare* stated

> [w]e read *O'Bannon* as holding that a Medicaid recipient's freedom of choice rights are necessarily dependent on a provider's ability to render services. No cognizable property interest can arise in the Medicaid recipient unless the provider is both qualified and participating in the Medicaid program. When the source of government benefits runs dry through legitimate state action, beneficiaries are hard-pressed to establish a legitimate entitlement to that benefit.[26]

Here, as in *O'Bannon* and *Kelly Kare*, the provider Ms. Longenecker has chosen is not qualified under the state Medicaid program. Ms. Longenecker's ability to "choose" this provider under the Medicaid program is not unlimited. She must choose among qualified providers; since Dr. McEachin is not a qualified provider, there can be no violation of the freedom of choice provision of the Medicaid Act. Count I must be dismissed.

3. <u>Count II of the First Amended Complaint fails as a matter of law because there is no legal right to a fair hearing under the facts presented in the complaint.</u>

In order to participate in the Medicaid program, Alaska must operate the program in compliance with federal statutory and regulatory requirements. One of the compliance requirements that Alaska must meet is to provide fair hearings (due process hearings) to applicants and recipients for adverse actions related to covered services.[27] 42 C.F.R. 431.220(a)(2) provides in pertinent part: "[t]he state agency must grant an opportunity for a hearing to the following: . . . (2) any recipient who requests it because he or she believes that the

---

[25]   *Id.* at 177.

[26]   *Kelly Kare*, 390 F.2d at 178 (*citing O'Bannon,* 447 U.S. at 798, 100 S. Ct. at 2482 (Blackmun, J. concurring)).

[27]   *See* 42 C.F.R. 431.200 -.250.

agency has taken an action erroneously." 42 C.F.R. 42.201 defines an "action" as the "termination, suspension or reduction of Medicaid eligibility or covered services." Thus, pursuant to the federal regulation, the only time a fair hearing must be provided is when there has been a suspension, reduction or termination of a covered Medicaid service.

A careful reading of the First Amended Complaint shows that there has been no reduction, suspension or termination of a covered service. The service that was requested was IAT – and it was approved.[28] The dispute arises because the state would not agree to a fair hearing related to whether Dr. McEachin could provide services. The argument appears to be that denying Dr. McEachin as a qualified provider is de facto denial of services. However, the federal regulations governing fair hearings do not support this position – the issue of who provides services is not the type of "adverse" action that the federal regulations recognize as subject to a fair hearing.[29]

Additionally, *O'Bannon v. Town Court Nursing Center*[30] supports the proposition that the determination that a recipient is not entitled to a due process hearing when the provider is not qualified. In *O'Bannon*, the recipients of the nursing home filed suit under the freedom of choice provision of the Medicaid act and alleged that they were entitled to a due process hearing before the home was disenrolled from the Medicare program. The court held that "since decertification does not reduce or terminate a patient's financial assistance, but merely requires him to use it for care at a different facility, regulations granting recipients a right to a fair hearing prior to a reduction in financial benefits are irrelevant."[31] This rationale is controlling on Ms. Longenecker's claim of a "right" to a fair hearing related to whether Dr. McEachin can provide or be reimbursed for services under Medicaid.

---

[28]    Complaint, Exhibit B and C (Docket 1).

[29]    42 C.F.R. 431.200-.250.

[30]    447 U.S. 773, 100 S. Ct. 2647, 65 L. Ed. 566 (1980).

[31]    447 U.S. at 787-89.

In order for Dr. McEachin to be eligible for reimbursement under the Medicaid program he must meet certain conditions of participation: he must be an enrolled Medicaid provider under 7 AAC 43.[32]  In addition, to be eligible to be reimbursed for IAT services, Dr. McEachin must be licensed under AS 08.[33]  There is no dispute between the parties that Dr. McEachin cannot meet either of these conditions.  Nor is there any dispute that the state approved the IAT service.  Since all the state has done is require Kavan Mangus to receive IAT from a qualified provider under state law and there has been no reduction, suspension or termination of the financial benefit that Kavan Mangus is entitled to, there is no right to a fair hearing under 42 C.F.R. 431.220(a)(2).

4. Count III of the First Amended Complaint fails as a matter of law because none of the named defendants is a "person' as defined under 42 U.S.C. § 1983.

Since Count I and II fail as a matter of law, there is no right to recovery under 42 U.S.C. § 1983.  In addition, it is well settled law that the State of Alaska, the Department of Health and Social Services and the Division of Senior and Disabilities Services are not persons under 42 U.S.C. § 1983.[34]  Therefore, neither the State of Alaska, the Department, DSDS, nor employees sued in their official capacities are "persons" under 42 U.S.C. § 1983, thus they cannot be sued for damages.  Count III should be dismissed.

**Conclusion**

There is no private right of action under the freedom of choice provision in 42 U.S.C. § 1396a(a)(23); regardless, any freedom of choice under the statute is limited to qualified providers.  Since the provider that Kavan Mangus wants to use is not qualified, there

---

[32]   *See* 7 AAC 43. 035, 7 AAC 43.065.

[33]   7 AAC 43.1048(c)(2).

[34]   *See Will v. Michigan*, 491 U.S. 58, 65-66, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), *Vest v. Shaeffer*, 757 P.2d 588, 589-601 (Alaska 1988)

has been no violation of the freedom of choice provisions. There has been no due process violation because the there has been no adverse decision, specifically, there has been no suspension, reduction, or termination of a covered service. Finally, since there has been no violation of the state or federal right or statute, there can be no recovery under 42 U.S.C. § 1983 and since none of the defendants is a "person" under 42 U.S.C. § 1983, there can be no recovery under that statute. Accordingly, this First Amended Complaint should be dismissed with prejudice.

Dated this 31st day of May 2006, at Juneau, Alaska.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By:  s/Stacie L. Kraly
     Assistant Attorney General
     Office of the Attorney General
     P.O. Box 110300
     Juneau, Alaska 99811
     (907) 465-3600
     (907) 465-2539
     stacie_kraly@law.state.ak.us
     Alaska Bar No. 9406040