DAVID W. MÁRQUEZ
ATTORNEY GENERAL

Stacie L. Kraly
Assistant Attorney General
Office of the Attorney General
P.O. Box 110300
Juneau, Alaska 99811
(907) 465-3600
Attorney for State of Alaska
Alaska Bar No. 9406040

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Jill Longenecker, as guardian for Kavan Mangus, a minor child,<br>  Plaintiffs,<br><br>vs.<br><br>State of Alaska, Department of Health and Social Services, Karleen Jackson, in her official capacity as Commissioner of the Department, Division of Senior and Disabilities Services, and Rod Moline, in his official capacity as Director of the Division,<br>  Defendants. | Case No. 3:06-CV-22 (TMB) |

**REPLY BRIEF**

<u>INTRODUCTION</u>

Ms. Longenecker cannot bring a successful action against the State in this case because her son Kavan's doctor is neither licensed in Alaska nor enrolled in the Alaska Medicaid Program, as required by 7 AAC 43.1048 and 7 AAC 43.1090. The

1

State does not dispute that Kavan needs intensive active treatment (IAT) services, and in fact has approved these services, but federal and state Medicaid law does not allow the State to pay for such services if they are provided by an unlicensed, unenrolled provider. Ms. Longenecker demands a fair hearing, but fair hearings deal with the termination, suspension, or reduction of services, none of which has happened here. Ms. Longenecker's request for IAT services is approved, but Dr. McEachin is not licensed to provide it. A fair hearing officer has no authority to order the State to use Dr. McEachin for Kavan's services, nor to license or enroll Dr. McEachin. Further, Ms. Longenecker cannot claim that the State has violated the "freedom of choice" clause because Ms. Longenecker can only choose freely between qualified[1] providers.

ARGUMENT

    I.    *O'Bannon* and *Kelly Kare* Apply to This Case

Without discussion, Ms. Longenecker attempts to dismiss as "distinguishable" the considerable law governing her claims.[2] The key issue in both cases cited by the State,[3] as in this action, is whether patients have a right to receive Medicaid coverage from an unqualified provider. In *O'Bannon v. Town Court Nursing*

---

[1]    A "qualified" provider is one that is licensed (if required by AS 08) and enrolled.

[2]    Plaintiff's Response to Defendants' First Motion to Dismiss, p. 6, ¶ 3.

[3]    *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773 (1980); *Kelly Kare v. O'Rourke*, 930 F.2d 170 (2d Cir. 1991).

*Ctr.* And *Kelly Kare v. O'Rourke*,[4] as in this one, patients sued the government to receive services from an unqualified provider. Both sets of plaintiffs in those cases tried the same legal theories as Ms. Longenecker: the due process right to a fair hearing and the "freedom of choice" clause. The United States Supreme Court and the Second Circuit dismissed those claims. The Supreme Court summed up its position in *O'Bannon* thus:

> Title 42 U.S.C. § 1396a(a)(23) gives recipients the right to choose among a range of *qualified* providers, without government interference…. But it clearly does not confer a right on a recipient to enter an unqualified [nursing] home and demand a hearing to certify it, nor does it confer a right on a recipient to continue to receive benefits for care in a home that has been decertified.[5]

Similarly, Ms. Longenecker has no right to choose Dr. McEachin, demand a hearing to qualify him, or be reimbursed by Medicaid if she continues to utilize his services until he becomes licensed and enrolled in Alaska.

## II. Fair Hearing

Ms. Longenecker is not entitled to a fair hearing under any of the theories raised in her Opposition.

### A. Plaintiff's Claim Fails on its Merits

For purposes of this motion, the State does not dispute that a private cause of action for a fair hearing based on an erroneous action exists under 42 C.F.R. 431.220(a)(2). Dismissal is appropriate, however, because Ms. Longenecker has not

---

[4]     *Id.*

[5]     *Id.* at 785 (citation omitted).

stated a claim for erroneous action on the State's part. In denying Medicaid reimbursement to Kavan's provider, the State simply followed the law, which permits payment only to a qualified provider.[6] It is not erroneous to comply with the law. To state a claim for a hearing under 42 C.F.R. 431.220(a)(2), Ms. Longenecker would have to claim that the State acted erroneously by not following the law. Absent this claim, the regulation does not entitle her to a fair hearing.

### B.  Plaintiff Cannot Get a Fair Hearing Regarding Dr. McEachin's Lack of Qualifications

Ms. Longenecker demands a fair hearing on "Dr. McEachin's eligibility,"[7] but fair hearings are not available to dispute provider qualifications. Fair hearings deal with government terminations, suspensions, or reductions of services,[8] not licensing or enrollment. The State has fully approved the services Kavan requires, but unfortunately Kavan's preferred service provider is neither licensed nor enrolled in the State of Alaska. The fair hearing process cannot deal with that problem. Ms. Longenecker asserts that she is entitled to a fair hearing because she "believed"[9] the State had denied her son services, or that the State's decision is an "effective denial."[10] Although at first Ms. Longenecker

---

[6]   *See* 7 AAC 43.035

[7]   Plaintiff's Response to Defendants' First Motion to Dismiss, p. 6, ¶ 2.

[8]   *See* 42 C.F.R. 431.201.

[9]   Plaintiff's Response to Defendants' First Motion to Dismiss, p. 4, ¶ 3.

[10]  Plaintiff's Response to Defendants' First Motion to Dismiss, p. 12, ¶ 3.

misapprehended the State's position, her brief clearly indicates that she currently understands the State's position in this case. Furthermore, the lack of qualified providers in Alaska merely underlines how important it is that Dr. McEachin become qualified. Until he does so, however, the State cannot reimburse him for services he provides Kavan even if the State has approved the services for Kavan. Because the State has approved Kavan's services, Ms. Longenecker has not stated grounds for a fair hearing.

The Code of Federal Regulations very clearly lays out the domain of fair hearing authority, and it does not cover provider licensing. Both parties agree that 42 C.F.R. 431.220(a)(2) and 431.201 govern the situations in which the State must grant a Medicaid recipient a fair hearing. None of the provisions has to do with provider licensing. Provider licensing and qualification are governed by AS 08.80.010 -.230 and 7 AAC 43.1048, and have no relation to the fair hearing process. A fair hearing officer cannot rule that Dr. McEachin is qualified or help Ms. Longenecker get Dr. McEachin licensed and qualified in this state. Ms. Longenecker's claims in this regard do not establish any basis for a fair hearing.

The United States Supreme Court made it very clear in *O'Bannon* that a Medicaid recipient has no right to a fair hearing when her covered services are approved but her preferred service provider is not qualified. As noted earlier, *O'Bannon* is on point with this case. *O'Bannon* dismisses a similar claim by nursing home residents whose preferred nursing home failed State qualification requirements. Because the nursing home lost its qualification, the residents had to move elsewhere, causing them to suffer

hardship.[11] The residents, like Ms. Longenecker, tried to claim that when the government refused to pay for services provided by the unqualified nursing home, they were entitled to a fair hearing because the State had denied them services.[12] The Supreme Court explicitly disagreed: "[s]ince decertification does not reduce or terminate a patient's financial assistance, but merely requires [her] to use it for care at a different facility, regulations granting recipients the right to a hearing prior to a reduction in financial benefits are irrelevant."[13] The same reasoning applies to Ms. Longenecker's claim.

  C. **The Order in the Matter of E.H.**

Plaintiff's Exhibit D to her Complaint, which appears to suggest that a fair hearing could address this matter,[14] is misleading. The exhibit, an "Order Concluding Hearing" in the Special Education Matter of E.H., appears to find Dr. McEachin qualified despite his lack of Alaska licensing. However, that Order deals with entirely different issues than are at stake here. The Special Education Matter of E.H. is an IDEA matter, and the administrative hearing—not a fair hearing—officer found Dr. McEachin qualified to provide expert services to the Fairbanks-North Star Borough School District.[15] The

---

[11] *Id*. at 777.

[12] *See, Id*. at 780.

[13] *Id*. at 785-786.

[14] Complaint, ¶ 9.

[15] *See* Case No. 3:06-cv-00033

standards to qualify for Medicaid coverage are entirely different, and are determined differently. Thus, the exhibit should have no bearing on this matter.

### D. Ms. Longenecker "Believed" the State Denied Her Son's Services

Ms. Longenecker tries to base her claim to a fair hearing on her past belief that the State reduced her son's services, but her initial misapprehension has since been cleared up. Plaintiff is correct that fair hearings are available to those who *believe* the State reduced their services erroneously.[16] However, Ms. Longenecker claims she "is entitled to a fair hearing because she *believed* the state reduced her sons' covered services."[17] It is clear from Ms. Longenecker's brief that she now understands that the issue is Dr. McEachin's qualification.[18] However, she asserts that "whether Ms. Longenecker is right or the State is right on the issue of Dr. McEachin's qualifications, Ms. Longenecker is entitled to a fair hearing because she *believed* the State reduced her son's covered services."[19] This misstates the law and intuitively is illogical. If she no longer believes that the State has reduced her son's services, why waste fair hearing time and resources now that both sides agree the problem is Dr. McEachin's lack of qualification? The regulations appropriately provide fair

---

[16]   42 C.F.R. 431.201.

[17]   Plaintiff's Response to Defendants' First Motion to Dismiss, p. 5, ¶ 3.

[18]   *See* Plaintiff's Response to Defendants' First Motion to Dismiss, p. 6, ¶ 2.

[19]   Plaintiff's Response to Defendants' First Motion to Dismiss, p. 4, ¶ 3 (Typographical corrections).

hearings to those who *believe* the State has acted erroneously, not those who at one time *believed* so.

Ms. Longenecker does make some attempt to argue that her misapprehensions are ongoing, but these are vague and belied by the body of the brief. Ms. Longenecker at one point in her brief states that "such a belief exists."[20] She also states that the record is "sufficient to form a good faith belief."[21] Again, however, the regulations refer to those who "believe" not those who "could reasonably form a good faith belief." The overall effect of Ms. Longenecker's brief demonstrates that she now fully understands that the State has approved the service, but that her chosen provider is not qualified.

### E.    "Effective Denial"

Ms. Longenecker appears to argue that the State's position effectively denies her son services, but again the law does not support her claim. Ms. Longenecker states that the State has not provided her with any "alternative equivalent providers."[22] Again, the State cannot order providers to become qualified. It is unfortunate that Alaska does not have as many autism specialists as other states, but this is not proper grounds for a fair hearing. The Supreme Court in *O'Bannon* made it clear that the inconvenience, or

---

[20]    Plaintiff's Response to Defendants' First Motion to Dismiss, p. 6, ¶ 2

[21]    Plaintiff's Response to Defendants' First Motion to Dismiss, p. 6, ¶ 1.

[22]    Plaintiff's Response to Defendants' First Motion to Dismiss, p. 5, ¶ 4.

even hardship, of having to change from an unqualified provider to a qualified provider does not amount to a denial of services. "The fact that the decertification of a home may lead to severe hardship for some of its elderly residents does not turn the decertification into a governmental decision to impose that harm,"[23] and the harmed patients have no constitutional right to a hearing on the revocation.[24] The Court compared the situation to a dispute between a nursing home and a utility: if the nursing home ceased to pay its electricity bill and the electricity were cut off, the residents would suffer harm but would have no right to become involved in the dispute between the nursing home and the utility.[25] Similarly, Ms. Longenecker is not entitled to a fair hearing on the subject of Dr. McEachin's qualifications, despite the hardship she may suffer because he has failed to become qualified.

### III. Freedom of Choice

#### A. There is no private right of action under 42 U.S.C. § 1369(a)(23)

The State has nothing to add to its discussion of whether Ms. Longenecker has a private cause of action under 42 U.S.C. 1396a(a)(23). The State maintains that this court should hold that the regulation does not create a private cause of action. However,

---

[23]   *Id.* at 789.

[24]   *Id.* at 775.

[25]   *Id*. at 788.

should this court decide that a private cause of action exists, Ms. Longenecker has not stated a claim under that regulation because she wants to choose an *unqualified* provider.

> **B.     However, if There is a Private Right of Action, the Claims Still Fail as a Matter of Law Because a Medicaid Recipient Can Only Choose Freely Between Qualified Providers**

The law governing this claim is extremely clear: a Medicaid recipient has no right to choose an unqualified provider. If Ms. Longenecker wants Medicaid to cover her son's treatment with Dr. McEachin, the doctor *must* seek qualification with the State of Alaska. Both *O'Bannon* and *Kelly Kare* address this question directly, and plainly state that the freedom of choice applies to qualified providers only. This is consistent with the regulation itself, which specifically limits its scope to "qualified" providers.[26] The law could not be clearer on this point. "While a patient has a right to continued benefits to pay for care in the qualified institution of his choice, he has no enforceable expectation of continued benefits to pay for care in an institution that has been determined to be unqualified."[27]

As the Supreme Court points out in *O'Bannon*, patients and the public benefit from government licensing requirements, and the government does not harm patients by enforcing them. Both Medicaid and privately funded patients are "beneficiaries" of government regulations guaranteeing minimum standards for all

---

[26]   42 U.S.C. 1396a(a)(23).

[27]   *O'Bannon* at 786.

patients.[28]  "The government is enforcing its regulations against the home for the benefit of the patients."[29]

The logical and legal way for Ms. Longenecker to resolve this issue is to encourage Dr. McEachin to become qualified with the State of Alaska.  In *O'Bannon*, the Court emphasized that the nursing home, not the government, was the party responsible for the patients' predicament.  The nursing home failed to meet government standards.  The Court even hinted that the injured patients in that case might have a claim against the nursing home.  As in the hypothetical example of a nursing home failing to pay utility bills, injured patients might have a claim against the nursing home, but not against the utility company.[30]

Similarly, Ms. Longenecker's problem in this case is that Dr. McEachin has chosen not to meet the State's requirements for licensing and Medicaid qualification.  This is not to say that Ms. Longenecker in this case should sue Dr. McEachin, but simply that her recourse is not against the State.  She has no freedom to choose Dr. McEachin because he is unqualified.  Her proper course of action is to convince Dr. McEachin to seek Alaska qualification.

---

[28]    *Id*. at 787.

[29]    *Id.* at 789.

[30]    *Id.* at 788.

### IV. Due Process

Ms Longenecker asserts that the State fails to address her due process claims, but the substance of these claims is unclear. If her due process claim refers to her demand for a fair hearing, the State addresses that claim thoroughly in its motion and reply brief. If Ms. Longenecker asserts that services by Dr. McEachin are a property interest that the government has taken without due process, *Kelly Kare* clearly demonstrates that no such property interest exists. At this time, the State has little to add to the very persuasive and thorough holding in *Kelly Kare* on such a claim: "[n]o cognizable property interest can arise in the Medicaid recipient unless the provider is both qualified and participating in the Medicaid program."[31]

### V. 42 U.S.C. §1983

The State has little to add to its argument that Ms Longenecker's §1983 claims fail because the named defendants are not "persons" under the statute. Ms. Longenecker asserts that her claim is proper because she seeks prospective relief in the form of an administrative hearing, but as demonstrated above, she has no right to a hearing in this case. Any claim she makes for monetary damages is clearly barred by *Will v. Michigan Dept. of State of Police*.[32]

---

[31]   *Id.* at 178.

[32]   491 U.S. 58 (1989).

CONCLUSION

For the reasons stated above, the court should dismiss the Complaint in its entirety. None of Ms. Longenecker's legal theories against the State can possibly succeed. The fundamental problem with Ms. Longenecker's case is that Dr. McEachin is not qualified to be reimbursed by the State for services provided to Kavan, which is not the result of State action, or a problem the State can solve. Ms. Longenecker has not stated a claim against the State for which relief can be granted, and her suit must be dismissed.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL


By:   s/Stacie L. Kraly
      Assistant Attorney General
      Office of the Attorney General
      P.O. Box 110300
      Juneau, Alaska 99811
      (907) 465-3600
      (907) 465-2539
      stacie_kraly@law.state.ak.us
      Alaska Bar No. 9406040


**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2006, a copy of the
foregoing was served electronically on the following parties of record:

Holly Johanknecht, Esq.
Disability Law Center of Alaska, Inc.
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503

_____
s/Stacie L. Kraly